**NEW PRODUCTS CORPORATION, a Delaware corporation, Plaintiff-Appellee,**

**v.**

**OUTBOARD, MARINE & MANUFACTURING COMPANY, a Delaware corporation, Defendant-Appellant.**

**No. 12324.**

United States Court of Appeals Seventh Circuit.

Feb. 5, 1959.

Rehearing Denied March 16, 1959.

S. L. Wheeler, Milwaukee, Wis., Timothy L. Tilton, Chicago, Ill., Wheeler, Wheeler & Wheeler, Milwaukee, Wis., Dawson, Tilton, Fallon & Lungmus, Chicago, Ill., of counsel, for appellant.

Warren C. Horton, Chicago, Ill., Charles F. Voytech, Chicago, Ill., of counsel, for appellee.

Before FINNEGAN [1] and SCHNACKENBERG, Circuit Judges, and WHAM, District Judge.

SCHNACKENBERG, Circuit Judge.

From a judgment of the district court holding valid claims 1, 3 and 5 of Banker patent 2,409,236 owned by plaintiff, New Products Corporation, a Delaware corporation, and determining that Outboard Marine & Manufacturing Company, a Delaware corporation, defendant, infringed said claims, defendant has appealed.

The Banker patent is for a *method* (defined by the claims in suit) of making roller cages. These claims pertain to steps performed upon a metal cylinder to form, in an economical and practical way, the device known as a bearing cage. A bearing cage is essentially an annular frame for holding the rollers of the roller bearing in perfect alignment with one another and with the axis of rotation of two members between which the rollers are inserted. Roller cages are old and were old at the time Banker applied for his patent in his original application filed October 2, 1939, the patent in suit resulting from a continuation application based upon a division of such original application. At the time that Banker's patent application was filed, these old roller cages were made generally from a number of pieces riveted or otherwise fastened together and were sufficiently satisfactory for light duty work. For heavy duty work, however, the old cages failed, usually where their parts were fastened together, and the problem confronting Banker was how to make a stronger cage cheaply and without making it too bulky, simply to gain strength in size. It is the allegedly novel *method* of making stronger cages which is the subject of the patent in suit. It is contended by plaintiff that the *method* of fashioning the cage must be such as to retain full control over the fashioning tool at all times, *i. e.*, the method must guide the tool precisely at all times and must not allow the tool to wander as it cuts the portions of the cage wherein the roller bearings are to be contained.

Banker testified that in 1936 a man named Stout found fault with a roller cage because it was not accurately machined on the roller slots, that he (Banker) stayed awake at nights, trying to find some way to make a cage accurately, and that, as a result, he made a drawing and sent it to Stout. This is claimed to be the birth of an invention.

The accused procedures of defendant, a manufacturer of outboard motors, are used in the making of bearings which defendant interposes between an inner race provided by the crank of an engine crankshaft, and an outer race provided by the connecting rod which transmits motion between the engine piston and the crankshaft. Defendant asserts that the use of cages (also known as retainers or spacers) for maintaining the rollers equidistant from each other, is conventional and that Robinson patent 2,053,534 is one among numerous examples thereof.

According to plaintiff, the invention covered by claims 1, 3 and 5 of the Banker patent includes the steps of (first) taking a cylindrical hollow metal

I. Judge Finnegan died before this opinion was prepared.

blank and forming a groove in its exterior cylindrical surface by a tool which removes metal by a scooping operation, and (second) then breaking through the bottom of the groove with a tool which comes in through the side of the blank and removes metal by a scooping operation from the side of the blank until openings are formed in the ring which may be used to hold the rollers of a roller cage. What is left is a ring-like cage having parallel, evenly spaced bars joined together at their ends by rings of metal.

Plaintiff asserts that the second scooping operation may be done by a broach or a milling cutter which moves crosswise of the groove.[2] Plaintiff states that, by contrast, a drilling action is not precisely controlled and is not a scooping action. A drill cuts with its end, not its side. The cutting end of a drill is always some distance removed from its support in the drill press and, consequently, as the drilling operation proceeds, the drill may bend slightly and its cutting end may wander, resulting in inaccurate work. The cutting action of a drill is not like that of a scoop because the closer one gets to the center of the drill, the less cutting action of any kind takes place; there is less and less cutting movement of the drill over the bottom of the hole and more sheer pressure crushing and breaking off the central portion of the metal.

On the other hand, defendant points out that broaching and drilling are admittedly ancient practices alternatively usable by those skilled in the art according to the nature of the opening to be produced. Witnesses for both parties were in accord to that effect. It is maintained by defendant that Robinson made it clear that it was not essential that the roller-receiving openings be circular.

Finn T. Irgens, a witness for defendant, testified that there is no reference to drilling in the Robinson patent and that bearing-receiving openings might be made by a method other than drilling. He referred to Robinson's statement:

"Also, while I prefer to use roller pockets having cylindrical walls, other forms of pockets may be used if desired."

Defendant contends that to a person skilled in the art, this comment inherently suggests a method of manufacture using a broaching operation. Irgens testified that only a round or cylindrical hole will be produced by a drill and that if another shape is desired (such as in plaintiff's method), a drill cannot be used. He added that the logical thing to use would be a broach, which can make any shape desired, the shape of an opening that is machined by a broach being determined by the cross sectional form of the broach.

Banker testified, under cross examination, that, if roller slots in the Robinson patent device were desired other than circular in cross section, they would naturally be broached and that practically broaching is much cheaper and more accurate in small quantities as well as large, including steel bearing cages.

Banker testified as to defendant's exhibit 2, which is a jaw clutch containing ribs in an inner periphery. He said that the ribs are a *"broached* spline drive for a gear or a clutch. This is a clutch, sure, and that is a standard procedure in making a clutch." (Italics supplied). He added that it was common for years prior to his invention to make that kind of a rib on the inner periphery or clutch body.

Plaintiff's counsel argue:

"Obviously broaching open slots on the inner or outer face of a channeled tube, as taught by Banker and used by defendant, is much more rapid and, hence, much less costly

2. A broach is a specially formed tool which has a contour like the cut or groove desired in the piece, the contour being formed by a series of sharp cutting teeth, each tooth being slightly larger than the next so that as the broach is passed through the blank, each tooth will remove a little more metal than the one that preceded it.

than drilling round sockets as required by the Robinson structure."

However, we are not convinced that rapidity of operation or reduction of the cost thereof, or both together, constitutes invention, even assuming that Robinson required round sockets.

In Leake v. New York Cent. R. Co., 2 Cir., 110 F.2d 166, it was held that the substitution of welding of metal for riveting or vice versa, whenever the one or the other appears to be more feasible, does not require "invention." At page 167, the court said:

"There is ample reason to believe that a desirable method for adding strength to structural members of the kind mentioned was set forth in the specifications. Whether or not what was disclosed amounted to invention depends, of course, upon much more than that for unless what was new was such a departure from the old that inventive thought was required to bring it about there was no basis for granting the patent."

At page 168, the court said

"* * * It cannot now be thought that it requires invention to substitute welding of metal for riveting or vice versa whenever the one or the other appears to be most feasible. Both processes are well known to anyone of ordinary skill in the metal working art. * * *"

To the same effect are Bauer Bros. Co. v. Bogalusa Paper Co., 5 Cir., 96 F.2d 991; Consolidated Electrodynamics Corp. v. Midwestern Instruments, 10 Cir., 260 F. 2d 811, at page 817. Also see #12385 in this court, Hyster Company v. Hunt Foods, Inc., 7 Cir., 263 F.2d 130.

In B. & M. Corp. v. Koolvent Aluminum Awning Corp. of Ind., 7 Cir., 257 F. 2d 264, at page 267, we said:

"Invention does not consist in the mere conception of applying an old device to a new use if the new use is so analogous to the old that the thought of adopting the device and applying it to the new use would occur to one skilled in the art and seeking to devise means to perform the desired function. Nor is invention involved in such a case even though some changes or modifications are necessary to the practical application of the device to the new use. * * *"

In the recent case of Consolidated Electrodynamics Corp. v. Midwestern Instruments, supra, the 10th Circuit Court of Appeals succinctly stated that perfection of workmanship is not patentable. To the same effect is Shaffer v. Armer, 10 Cir., 184 F.2d 303, 307.

In Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 91, 62 S.Ct. 37, 40, 86 L.Ed. 58, is this statement of fundamental law:

"* * * 'Perfection of workmanship, however much it may increase the convenience, extend the use, or diminish expense, is not patentable.' * * *"

The district court filed "Findings of Fact" and "Conclusions of Law."[3] Plaintiff relies very heavily upon Findings 6, 11, 12, 13, 15, 16, 17 and 18, insisting that they are not clearly erroneous. We are referred to rule 52(a) of the Federal Rules of Civil Procedure. 28 U.S.C.A. rule 52(a). Plaintiff describes the above-numbered findings (except No. 6 which relates to the charge of infringement) as being "to the effect that the Banker patent in suit is valid." However, the question of validity is one of law (Noble Co. v. C. S. Johnson Company, 7 Cir., 241 F.2d 469, 476), to which rule 52(a) has no application.[4] Defendant's counsel are correct when they state:

"The findings will be put in proper perspective if we point out that Defendant could accept every finding, regardless of its correctness, and still be entitled to prevail on the issue of invalidity."

---

3. 160 F.Supp. 795.

4. The district court, in its Conclusion of Law 2, held the claims in suit valid in law.

Validity being a matter of law, we are not inhibited by rule 52(a) from passing upon it upon appeal, Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 148, 71 S.Ct. 127, 95 L.Ed. 162. We have a right to determine whether the district court applied the correct criteria of invention. We hold that it did not do so.

For the reasons hereinabove stated, we hold that claims 1, 3 and 5 of Banker patent 2,409,236 are invalid. We are, therefore, not now concerned with the charge of infringement. An invalid patent cannot be infringed. Simmons Company v. A. Brandwein & Co., 7 Cir., 250 F.2d 440, 447; The Diversey Corporation v. Charles Pfizer and Co., 7 Cir., 255 F.2d 60.

The judgment of the district court is reversed.

Reversed.