ACF INDUSTRIES, INCORPORATED,
Plaintiff,

v.

AIRTEX PRODUCTS, INCORPORATED,
and

United Industrial Syndicate, Incorporated,
Defendants.

Civ. No. 5193.

United States District Court
E. D. Illinois.

May 20, 1965.

William J. Barnes, of Fish, Richardson & Neave, New York City, Howard Boman, Oehmke, Dunham & Boman, East St. Louis, Ill., for plaintiff.

Albert M. Zalkind, Washington, D. C., Wayne P. Williams, Walker & Williams, East St. Louis, Ill., Loy & Cochran, Fairfield, Ill., for defendants.

JUERGENS, District Judge.

This patent infringement suit is brought by ACF Industries, Incorporated, against Airtex Products, Incorporated, under the provisions of Section 281, Title 35 United States Code. Jurisdiction and venue are provided under Sections 1338 (a) and 1400(b), Title 28 United States Code.

Plaintiff is a New Jersey corporation with its principal place of business in New York. Defendant is an Illinois corporation and has its principal place of business in Fairfield, Illinois. Pursuant to stipulation, United Industrial Syndicate Incorporated, a New York corporation, was joined as a party defendant— this corporation having been in control of the operations of defendant Airtex Products, Incorporated, from a date prior to the service of the complaint in this action. Service of process was waived by United Industrial Syndicate, Incorporated, and it submitted to the jurisdiction of the Court for purposes of this action.

The complaint alleges that on June 24, 1958 United States Letters Patent No. 2,840,003 was issued to the plaintiff's assignors for an invention in fuel pump diaphragm assembly; that, at the present time and at all times since the issuance of the patent, plaintiff is the owner of the letters patent and of all rights of recovery thereunder; that defendant Airtex has been and is manufacturing, selling and using fuel pump diaphragm assemblies in infringement of the letters patent; that defendant was given notice of the letters patent and its infringement; that the patent has been put in commercial use and plaintiff has been damaged and will be irreparably injured unless the infringement activities are enjoined. Plaintiff prays for judgment— finding that plaintiff is the owner of the letters patent and all rights of recovery thereunder; that the patent is valid and has been infringed by the defendant; that an injunction be issued against the infringement by the defendant; that an accounting be had to determine damages adequate to compensate plaintiff for the infringement; that damages be trebled because of the willful and deliberate character of the infringement; and that assessment of costs be made against the defendant together with attorneys' fees and for other relief the Court deems proper.

Defendant filed its answer, which consists of a general denial. As special defenses defendant alleges that (1) the patent was void for having been known and used in the United States more than one year prior to filing of the application; (2) the patent is void for want of invention over prior art; (3) the patent is void for the reason that the specification fails to give adequate information; (4) the patent is void for the reason that the patentees are not the true inventors; (5) the claims granted by the Patent Office describe structure for the first time more than one year after the pumps having such structure were made and sold by plaintiff; (6) the attorneys prosecuting the patent application were aware of key prior art patents and failed to call the Examiner's attention to such patents.

Defendant also filed a counterclaim under the Declaratory Judgments Act for a finding of invalidity and non-infringement of the patent and for a judgment finding the patent unenforceable for the reason that plaintiff is engaged in illegal practice with respect to the patent and that patentee is attempting to monopolize trade by virtue of price cutting in an effort to force defendant out of business in violation of Section 2 of the Sherman

Anti-Trust Act and on the grounds of unfair competition and asks for an injunction forbidding plaintiff from threatening defendant's customers or prospective customers or from alleging to such customers or to the trade in general that defendant is infringing the patent or is otherwise acting unlawfully.

During the pretrial proceedings it was stipulated that the defenses of violation of the Anti-Trust Law and of unfair competition are no longer a part of the case. Accordingly, the issues raised by the counterclaim with reference to the allegations of violation of the Anti-Trust Law and of unfair competition are no longer pertinent.

Plaintiff, through its Carter Carburetor Division in St. Louis, manufactures and sells fuel pumps to the automotive industry. These sales are primarily for use as original equipment; that is, the pumps are installed on new automobiles. To a much lesser extent plaintiff also sells fuel pumps in the "after" market, which includes sales for both equipment service and replacement service. Defendant Airtex manufactures and sells fuel pumps at its plant in Fairfield, Illinois; however, Airtex, unlike plaintiff, sells almost exclusively for replacement service. Defendant United Industrial Syndicate, Incorporated, is in control of the operations of defendant Airtex.

Plaintiff in support of its allegation of infringement relies only on claim 3 of the patent in suit.

Claim 3 is as follows:

"3. A fuel pump comprising a casing forming a pumping chamber, said pumping chamber having its end wall portion provided with inlet and outlet openings, a diaphragm forming a pumping element and one wall of said chamber, said diaphragm having its outer peripheral portion secured to the casing, said diaphragm being provided with an inwardly projecting bight at its outer portion, backing plates disposed upon the inner and outer sides of a central portion of the diaphragm, a centrally positioned operating stem connected thereto, spring means on the stem normally urging said diaphragm into said pumping chamber, the peripheral edge of said inner plate being spaced a sufficient distance from the wall of said chamber to provide an annular area between said wall and said plate to permit said bight in said diaphragm to project therebetween in the direction of the pumping chamber, said peripheral portion of the inner backing plate extending along the adjacent inner face of the bight to guide and retain the same against deflection inwardly, and the peripheral portion of the outer backing plate being spaced laterally from the peripheral portion of the inner backing plate and normally projecting into the concave portion of said bight and engaging the adjacent outer concave wall of the diaphragm defining the bight for retaining the bight against outward deflection."

The invention relates to engine driven fuel pumps of the diaphragm type.

Fuel pumps are used in internal combustion engines primarily of the gasoline type. They are used to pump gasoline from the gas tank to the carburetor where it is mixed with air and delivered into the engine and burned to furnish power.

Generally, the fuel pump is bolted to the engine and has a lever or rocker arm, one end of which engages the stem of a diaphragm assembly; the other end is projected into the engine where it comes into contact with a cam on the engine camshaft. The cam, being eccentric, causes the rocker arm to oscillate, thereby moving the diaphragm assembly of the fuel pump. The diaphragm assembly consists of a flexible diaphragm clamped between two plates. As the rocker arm moves, it alternately causes the diaphragm to raise and lower. As the diaphragm is raised or moved upward, it compresses a spring which surrounds the stem above the diaphragm assembly; and as the rocker arm is lowered, the compressed spring forces the diaphragm assembly downward. As the diaphragm is raised, it creates a suction in the pump

chamber below it. This suction draws the gasoline from the tank through a valve into the pump chamber (this action of the diaphragm is generally referred to as a vacuum or suction stroke). As the rocker arm lowers, the spring forces the diaphragm into the downward position, fuel in the pump chamber is subjected to pressure and is forced from the pumping chamber through an outlet valve to the carburetor (this is generally referred to as the discharge or pumping stroke). The action of the suction and discharge stroke sometimes occurs as rapidly as 2,000 times or more per minute.

Most of the fuel pumps used by the various car manufacturers at the time of the application for the patent in suit were of a pulsating design, which consisted of a circular flexible diaphragm clamped at its periphery between the circular flanges of the rocker arm casing and the valve casing of the pump. A pump utilizing this type of a diaphragm is generally referred to as a flat plate pump. The flat plate pump contains a diaphragm of a flexible material with slack provided to accommodate the movement of the backing plates in their movement from the suction to the discharge stroke. A wrinkle or loop is formed in the flexible material between the pump wall and the backing plates. On the suction stroke this wrinkle or loop forms on the side of the backing plate in the direction of the pumping chamber, but on the pressure stroke the wrinkle or loop forms in the opposite direction. This back and forth switching of the loop of the diaphragm tended to cause cracking of the diaphragm and ultimate pump failure. This flopping back and forth or loop formation on alternate sides of the backing plates is sometimes referred to as loop reversal. This has several defects. The constant flexing of the diaphragm in operation tends to cause excessive wear of the diaphragm and ultimate diaphragm failure. Because the loop is reversed away from the bottom of the pumping chamber at the end of the discharge stroke, it permits a certain amount of fuel to remain in the pumping chamber. This defect becomes more serious as the volatility of gasoline increases. Another defect is erratic delivery pressure. If a diaphragm were constantly operated back and forth in the full range of its permissible movement, then the defects noted would tend to increase; however, under normal operating conditions the carburetor uses only a very small amount of the gasoline which can be pumped with each stroke of the diaphragm. Consequently the diaphragm ordinarily moves very little during the major part of its operation and the pulsating of the diaphragm is limited to a range of only a few hundredths of an inch when a vehicle is traveling from 40 to 60 miles an hour.

The movement of the diaphragm is controlled by the demand of the gasoline needed to keep the carburetor fully supplied. The gasoline in the line from the pump to the carburetor forms a solid column and the spring cannot expand to force the diaphragm to its lowermost position. Thus, the extent of the movement of the diaphragm is directly related to the engine's demand for gasoline; and unless the carburetor has been emptied of fuel or is badly in need of fuel, the diaphragm does not operate through its entire range. During cranking after the car has been stopped, there is a tendency for the diaphragm to be moved through its entire range. This condition may also occur when there is an unusual amount of air or gas fumes in the line which may be caused by unusual conditions of heat or a loss of pressure in the fuel line caused by evaporation of gasoline which tends to form bubbles and break the continuity of flow of gasoline from the gasoline tank to the carburetor.

This break of continuity of fuel in the gas line is commonly referred to as "vapor lock." Vapor lock tends to cause faulty operation of an automobile and may even result in stopping the engine due to lack of fuel supply to the carburetor.

With the advent in recent years of the highly volatile fuels used in modern automobiles, it became necessary that a fuel

pump be provided which would push out virtually all of the contents of the pump chamber on the discharge stroke so the gasoline vapor would be pushed into the carburetor, expelled to the engine and a constant supply of fuel maintained. With the increased use of highly volatile fuels in automotive operation, it became increasingly more important that a greater volumetric efficiency be obtained from fuel pumps; since they were called upon to deliver a constant supply of these volatile fuels and since only a limited space is provided for installation of a fuel pump, it became necessary for the designers to develop a fuel pump approximately the same size and yet delivering a greater volumetric efficiency.

On September 16, 1954, Eldon A. Johnson and Jack M. White filed their application for patent on a fuel pump diaphragm assembly which was ultimately issued by the Patent Office on June 24, 1958. The original application contained six claims, all of which were rejected by the Patent Office. Thereafter, an amended application was filed which contained claims 7 through 10 inclusive. These likewise were rejected. Subsequently, by amendment, claims 11 through 15 were submitted, all of which were rejected. Thereafter, claims 16, 17 and 18 were submitted, which ultimately became claims 1, 2 and 3 respectively of the patent in suit. The patent was issued and was thereafter assigned to plaintiff.

Plaintiff claims that in constructing the fuel pump according to the teachings of the patent in suit the inventors started with diaphragm plates which they contoured so that the diaphragm material was directed always in the same direction; that this was accomplished by providing a lower plate with a turned down lip and an upper plate of larger dimensions which also had a turned down lip; thus, forcing the diaphragm into a frusto-conical shape; that when a diaphragm assembly is placed in a pump, a loop is formed which always extends downwardly into the pumping chamber and does not reverse as the diaphragm is moved from the suction to the discharge stroke or from the discharge to the suction stroke. Plaintiff also contends that in the patent in suit as the diaphragm moves from the uppermost position of the suction stroke to the lowermost position of the discharge stroke, the diaphragm loop rolls against the wall of the pumping chamber and as the diaphragm moves in the opposite direction, the diaphragm material unrolls; that the loop formed by the directing action of the backing plates is in the shape of an arch; that the arch shape persists throughout all movements of the diaphragm, merely assuming a slightly different shape with each change of the position of the diaphragm; that the loop never reverses; that the arch is not an ordinary arch since one leg is clamped by the flanges of the pump housing and remains in a fixed position while the other leg is clamped to the moving backing plates; that this leg moves up and down with the diaphragm assembly and results in what is called a "rolling" arch diaphragm; that the loop of the patent in suit is a free arch, that is, it is supported only at its ends and all of its intermediate portions are unrestricted except as the material itself possesses inherent strength.

Plaintiff contends that over the years many suggestions have been made by fuel pump designers to support a diaphragm loop by an underlying portion of a backing plate, but that such loops are not free arches because they rest against a backing plate and the use of one plate to support a loop is not sufficient in that it will guide the loop only during one direction of diaphragm movement; during the opposite diaphragm movement the loop will be free to move away from the backing plate and may, and frequently does, reverse its direction of bending; furthermore, the diaphragm plate which supports the loop would restrict or interfere with the rolling movement of the loop. Plaintiff further asserts that no pump designer had ever suggested that both backing plates should be so contoured as to point one leg of the loop always in the same direction; that prior to the inven-

tion in question no fuel pump ever had a free rolling diaphragm loop always extending toward the pumping chamber.

Plaintiff claims that a number of advantages are realized by the pump construction taught by the patent in suit and that all of these advantages result from the fact that the diaphragm loop is directed into the fuel chamber in such a manner as to prevent loop reversal while at the same time providing a rolling diaphragm loop in the form of a free unrestricted arch; that as the diaphragm loop of the patent construction projects toward the fuel chamber at all times and rolls and unrolls on the side of the fuel chamber, the bottom of the chamber may be made to conform exactly with the bottom contour of the diaphragm assembly; hence, the chamber is completely emptied on each pumping stroke; also, the intake of gasoline begins immediately upon the commencement of the suction stroke; no volume is lost by reason of a reverse or flopping loop; that a directed loop diaphragm thus affords a means by which a fuel pump with good volumetric efficiency can be produced; that such a pump has a greater pumping capacity than a flat plate pump of the same diameter and with the same length of stroke; that although both directed loop and flat plate pumps have more than enough capacity to pump the required amount of fuel at moderate temperatures, the greater pump capacity of the directed loop becomes important at high vapor lock temperatures; that the ability of a pump to operate under vapor lock conditions where the fuel is principally in a gaseous state can be shown by its ability to pump air; that the directed loop pump has a greater capacity at cranking speeds than a flat plate pump of the same size and stroke, which becomes important at low temperatures when starting an engine; that the directed loop pump delivers fuel to the carburetor at substantially uniform pressures, whereas flat plate pumps are subject to variations in delivery pressure; that although flat plate pumps can be redesigned by employing overstuffed plates, lengthening the stroke and contouring the pump

chamber so as to have about the same pumping capacity as a directed loop pump, the directed loop pump will have a substantially uniform delivery pressure whereas the redesigned flat plate pump will produce delivery pressures even more erratic than the delivery pressures of a standard flat plate pump; that slight differences in stroke or clearance within manufacturing tolerances cause only insignificant variations in the delivery pressure of directed loop pumps, whereas similar differences cause extreme variations in redesigned flat plate pumps; that since the diaphragm loop does not reversely flex on each stroke, the patented pump has greater durability and less diaphragm failure than flat plate pumps, whether standard or overstuffed; that the directed loop pump permits the use of larger diaphragm plates to more nearly approach a piston effect and the use of longer strokes, both of which contribute to the increased capacity of the patented pump.

One of the defenses presented is that the patent is void for want of invention over the prior art. In support of this contention defendants presented a great number of patents and prior art publications. The Court will, however, direct its attention to only a limited number of the prior art publications and patents.

On March 23, 1938, Erwin C. Horton applied for a patent for a motor vehicle accessory, and Patent No. 2,258,009 (Defendants' Exhibit No. 59) was granted on October 7, 1941, pursuant to the application. The Horton invention relates to a motor vehicle accessory and primarily to an air pump adapted to be driven from a moving part of the vehicle, which has for its purpose to operate a high speed short stroke pump in which the parts are mounted and disposed to cooperate in generating a reliable and uniform degree of pressure at low as well as high speed operation of the pump. The invention does not relate to a fuel pump. During the course of the trial, however, the testimony developed that the air pump described by Horton could readily be adapted for fuel pump purposes.

In describing the piston and its operation the following appears in the patent:

"The piston is of the diaphragm type and embodies a pair of body plates which have their marginal positions embracing the inner edge of an annular webbing or diaphragm. The outer edge of the diaphragm is firmly held between a seat in the housing section and a seat in the companion or mounting section. The diaphragm is preferably formed of rubber which, owing to its elastic nature, will stretch or yield without buckling or folding during operation. The intermediate portion of the diaphragm may be formed with a permanent arch to further guard against folding upon itself and thereby weakening its structure. The body plates of the piston are secured together at their centers by the tubular bolt and its nut, with the plates being spaced apart for forming a valve chamber * * *" (figure numbers omitted).

The diagrams of the Horton patent show a flexible diaphragm which is clamped at its outer edge between the walls of the housing and at its inner edge between movable plates. The flexible diaphragm engages the walls of the pumping chamber, and as the diaphragm reaches the end of its suction stroke, a loop is formed comparable to the loop found in the patent in suit. Unlike the patent in suit, the diaphragm does not extend under the clamping plates but rather is clamped at its inner edge between the clamping plates. The Horton diaphragm, like the patent in suit, is so formed and clamped at its inner edge that a loop is formed which extends into the pumping chamber. The diaphragm also appears to roll against the walls of the pumping chamber as it moves from the suction to the discharge stroke (the rolling action in Horton is not as pronounced throughout the entire stroke as plaintiff claims for the patent in suit). The Horton diaphragm is, however, in the shape of an arch (although not as pronounced an arch as in the patent in suit).

March 8, 1949.          C. W. VAN RANST          2,464,196
FUEL PUMP

Filed Aug. 10, 1945

Figure 1

Nov. 27, 1951     C. W. VAN RANST ET AL     2,576,894

FUEL PUMP

Filed Dec. 8, 1945

Figure 2

The foregoing Figures 1 and 2 show the construction of fuel pumps for which patents were issued to C. W. Van Ranst. Figure 1 shows the construction of a fuel pump for which Patent No. 2,464,196 (Defendants' Exhibit No. 46) was granted to Van Ranst on March 8, 1949. Figure 2 shows a fuel pump for which Letters Patent No. 2,576,894 (Defendants' Exhibit No. 47) was issued to C. W. Van Ranst et al. on November 27, 1951.

The diagrams in both Figure 1 and Figure 2 show a fuel pump containing a diaphragm clamped at its outer periphery by a housing with its inner portions clamped between inner and outer clamping plates. Both Figures 1 and 2 disclose a fuel pump containing a flexible diaphragm with a loop directed toward the pumping chamber, which in operation rolls upon the pumping chamber walls—rolling against the pumping chamber in the discharge stroke and rolling away from the pumping chamber in the suction stroke.

Figure 3

Figure 3 above shows the construction of the diaphragm of the patent in suit. It is readily apparent that the construction of the diaphragms and backing plates in the Van Ranst patents and the patent in suit are almost completely identical. The sole difference between the Van Ranst patents and the patent in suit lies in the formation of the outer clamping plate (i. e., the clamping plate exterior of the pumping chamber). In the Van Ranst construction the outer clamping plate is straight, while in the patent in suit the outer lip of the outer clamping plate has been turned down and engages a greater portion of the flexible diaphragm than does the Van Ranst.

The testimony established that the purpose of the outer clamping plate in the patent in suit is to direct the loop in the direction of the pumping chamber and to provide a clamping area without a sharp edge so as to avoid cutting the diaphragm material during operation. It was also established that the outermost portions of the outer clamping plate of the patent in suit did not engage the central portion of the loop, nor was its

purpose to act as a support for the central portion of the diaphragm loop; rather, its purpose was merely to direct the loop always into the pumping chamber. The testimony further developed that it would be merely a mechanical operation to bend down the outer backing plate of the two Van Ranst patents; that if the Van Ranst construction had a tendency to permit loop reversal, this loop reversal could be reduced or eliminated by providing heavier backing plates or by bending the outer backing plate to provide additional support to the diaphragm.

The Van Ranst constructions, like the construction of the patent in suit, show a loop directed into the fuel chamber, a rolling diaphragm loop in the form of a free, unrestricted arch, a diaphragm which tends to roll and unroll on the side of the fuel chamber, a construction which permits a contoured bottom of the pumping chamber which admits the contour of the diaphragm assembly to completely empty the pumping chamber on each pumping stroke.

The claims of the patent in suit relate only to the particular type of diaphragm and the backing plates used. It has not been, nor could it be successfully, contended that the other features of the fuel pump set forth in the patent, and specifically in claim 3, are intended as a part of the invention, since all of the features other than the diaphragm and backing plates therefor are demonstrated and explained in the prior art pertaining to fuel pumps.

The invention narrows down to a claim which relates solely and exclusively to the type of diaphragm and backing plates used in a fuel pump.

After the Patent Office had rejected the first fifteen claims of the patent, claims 16, 17 and 18 were then presented on March 12, 1958. Certain remarks concerning the prior art accompanied the application. These remarks are in pertinent parts as follows:

"This application has been carefully reviewed in view of the new references cited in the last Office ac-

tion and it is noted that the Van Ranst patent No. 2,464,196 shows a diaphragm having an outer portion projecting generally towards the pump chamber. However, in the Van Ranst patent, as in all of the art of record, the outer backing plate does not have a peripheral portion normally projecting into the concave portion of the bight and engaging the adjacent face of the diaphragm defining the bight for retaining the bight against substantial deflection regardless of pressure in the pumping chamber. As is well known in the art, the diaphragm of a pump such as the Van Ranst pump is subject to varying pressures and consequently any bight formed in the diaphragm unless supported and retained in a supported position would be deflected and such deflection would obviously modify the pumping effect as well as eventually create an inoperative structure by virtue of said bight being forced into a reverse position.

"Applicant's invention is clearly defined in each of the three new claims as embodying a peripheral portion of the backing plate projecting into the concave portion of the bight and engaging the bight for retaining the same against deflection. * * * In claim 18 applicants are claiming the novel shape of the peripheral portion of the inner backing plate, as well as the structure of the peripheral portion of the outer backing plate, these peripheral portions of the two plates being defined as spaced laterally from each other and normally supporting the inner face of the bight as well as the concave portion of the bight for retaining the bight against deflection."

Jack M. White, one of the co-patentees of the patent in suit, during the course of his deposition taken on the 27th day of April, 1964, testified that the outer plate of the diaphragm touches the portion of the arch where it clamps against

the fuel side of the plate; that it did not touch in the central section of the arch; that the outer portion of the outer plate was not particularly necessary in the operation of the pump; that the outer portion of the outer plate could be removed without affecting the invention so long as a sharp edge did not remain.

The inventor appears to shift position in his deposition testimony from the remarks made to the Patent Office. In the course of the remarks made to the Patent Office the following was stated:

"* * *, these peripheral portions of the two plates being defined as spaced laterally from each other and normally supporting the inner face of the bight as well as the concave portion of the bight for retaining the bight against deflection."

The evidence at the trial did not establish that the diaphragm in a fuel pump following the Van Ranst Patent 2,464,196 would be more inclined to deflection during operation or any more inclined to reverse than the diaphragm of the patent in suit. There were a number of used pumps of the patent design introduced in evidence in which the diaphragm had reversed position.

Considering all evidence presented, the Court finds that the evidence completely failed to establish that the Van Ranst pump is more subject to varying pressures or to deflection or to reversing than is a pump constructed according to the patent in suit, contrary to the statements made to the Patent Examiner as appear in the file wrapper (Plaintiff's Exhibit No. 2).

June 20, 1933.    E. E. HEWITT    1,914,600
FLEXIBLE GASKETT
Filed Aug. 6, 1931

Figure 4

Figure 4 above shows a drawing of the sectional view of a flexible diaphragm for which Patent No. 1,914,600 (Defendants' Exhibit No. 11) was granted to Ellis E.

928

Hewitt on June 20, 1933 for a flexible gasket. This patent does not relate to fuel pumps but is a diaphragm type flexible gasket. An examination of the diaphragm shows that its design squarely meets all parts of the claims concerning the diaphragm of the patent in suit. The outer portions of the diaphragm are clamped between the housing while the inner portions of the diaphragm are clamped between clamping plates on a movable abutment. The inner clamping plate extends across the base of the diaphragm while the outer clamping plate directs the flexible gasket into a loop projecting inwardly.

No. 8768/32.

Figure 5

Figure 5 shows the diagram accompanying Australian Patent No. 8768/32 (Defendants' Exhibit No. 12), issued 16 August 1932, which relates to a flexible diaphragm clamped between the chamber This invention does not relate to fuel pumps but it does relate to a flexible diaphragm. The diaphragm in Hewitt

(Defendants' Exhibit No. 12) shows a diaphragm clamped between the chamber walls on its outer periphery and clamped between two clamping plates at its inner periphery. The inner plate extends across the base of the diaphragm and the outer or backing plate, working together with the inner plate, extends beyond the inner plate and directs the diaphragm in a loop inwardly toward the pressure chamber. In operation the diaphragm would roll and unroll on the chamber walls. The patent refers specifically to a support for the outer backing plate which gives added support to the diaphragm to keep it always projected inwardly and also acts as a guide upon which the outer backing plate may operate. The diaphragm depicted in Figures 4 and 5 clearly anticipates the diaphragm assembly of the patent in suit.

In all patent cases the court must start with the presumption of validity which attaches to the grant. It is axiomatic that a patent from the fact of issuance is presumed to be valid. University of Illinois Foundation v. Block Drug Co., 7 Cir., 1957, 241 F.2d 6. This presumption is a positive factor which must be overcome by clear and convincing evidence by one who asserts invalidity. Consolidated Electrodynamics Corp. v. Midwestern Instruments, 10 Cir., 1958, 260 F.2d 811; Artmoore Co. v. Dayless Mfg. Co., 7 Cir., 1953, 208 F.2d 1. In a suit for infringement of a patent, it is not a part of the plaintiff's case to negative prior publication or prior use. These are matters of affirmative defense. The grant of letters patent is prima facie evidence that the patentee is the first inventor of the device described in the letters patent and of its novelty. The issue of the patent is enough to show, until the contrary appears, that all the conditions under which a discovery is patentable in accordance with the statutes have been met, and the burden of proving want of novelty is upon him who avers it and this burden is a heavy one. Mumm v. Jacob E. Decker & Sons, 301 U.S. 168, 57 S.Ct. 675, 81 L.Ed. 983.

The Constitution authorizes Congress to reward inventive genius by providing for the issuance of patents but does not authorize the issuance of patents as a reward for mechanical skill alone. Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 91, 62 S.Ct. 37, 86 L.Ed. 58; Steffan v. Weber Heating & Sheet Metal Co., 8 Cir., 237 F.2d 601, 604. While a presumption of validity of a patent arises from its issuance by virtue of 35 U.S.C.A. § 282, this presumption is rebuttable. Selmix Dispensers, Inc. v. Multiplex Faucet Co. (Inc.), 8 Cir., 1960, 277 F.2d 884, 886.

Functions performed by a combination may be new and useful but that does not necessarily make the device patentable. They must not only be new and useful; they must also be an invention or discovery. It has been recognized that, if an improvement is to obtain the privileged position of a patent, more ingenuity must be involved than the work of a mechanic skilled in the art. Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 90, 62 S.Ct. 37, 86 L.Ed. 58.

The Court recognizes that in this case a patent was issued by the Patent Office and therefore accords the patent the presumption of validity which inures from the very grant of the patent. It further recognizes that one of the principal prior art patents which the Court has considered in reaching its determination in this case was before the Patent Examiner at the time the grant was made, namely, Van Ranst 2,464,196; however, the comments accompanying the final application with regard to this Van Ranst patent were not borne out by the evidence at the trial. The Court therefore finds that it should, as it has done, consider the Van Ranst patent in reaching its determination of the facts in this case.

The evidence established that only mere mechanical skill by one skilled in the art was necessary to adapt either of the Van Ranst patents to fully meet the claims of the patent in suit by simply turning down the outer portion of the outer backing plate. The Court finds

that the claims of the patent in suit could have been achieved by a mechanic skilled in the art following the teachings of the prior art and therefore lacked "that impalpable something which distinguishes invention from simple mechanical skill." Noble Co. v. C. S. Johnson Company, 7 Cir., 1957, 241 F.2d 469, 479.

All facets of the invention in question were disclosed by most prior art in the fuel pump field with the exception of the diaphragm and the clamping plates controlling same. The diaphragm and clamping plates shown in both of the Hewitt patents (supra) disclose the identical diaphragm and clamping plates shown in the patent in suit in so far as their functions and formation are concerned. The diaphragms and inner backing plates in the Van Ranst patents (supra) clearly anticipate the diaphragm and inner backing plate in the patent in suit. The only variance between the Van Ranst patents and the patent in suit with reference to the diaphragm and backing plates is found in the outer backing plate. The evidence adequately disclosed that turning down the outer lip of the outer backing plate in the Van Ranst patent to fully conform the Van Ranst patent to the patent in suit is nothing more than mechanical skill which would be obvious to one skilled in the art.

The Court finds that both Van Ranst patents disclose the exact structure of the patent in suit with the exception of the bending down of the outer clamping plate. The Court further finds that the variance between the two constructions (i. e. Van Ranst and Johnson) is not sufficient to show the inventive genius required for a patent grant.

The Court finds that the patent in suit is anticipated by the Van Ranst Patent 2,464,196 and Van Ranst et al. Patent 2,576,894. The Court further finds that the diaphragms and backing plates of the patent in suit are anticipated by Hewitt 1,914,600 and Hewitt Australian Patent 8768/32.

Plaintiff makes much of its claim of commercial success and points to the vast usage of fuel pumps in the trade utilizing the design shown in the patent in suit. "Commercial success without invention will not make patentability." Selmix Dispensers, Inc. v. Multiplex Faucet Co. (Inc.), 8 Cir., 1960, 277 F.2d 884.

In Wahl Clipper Corporation v. Andis Clipper Co., 7 Cir., 1933, 66 F.2d 162, the following appears:

"* * * (W)e appreciate the need of close scrutiny to ascertain whether increased sales were attributable to the merits of the device (in other words, is the public paying tribute to the inventor?), or whether such increased sales are due to advertisement (there is doubtless advertising genius as well as inventive genius), to an intensive sales drive, a consolidation of competing industries, an abandonment of the manufacture of an old article, the happy use of a trade-name, a sharp revival of business, or any other means which an alert management of an industry successfully adopts to sell a nationally used article."

As stated in the patent "Space must be minimized in order to attain the maximum possible volumetric efficiency to handle modern fuels which contain high volatile ends." Thus, the need for increased volumetric efficiency arose with the use of modern fuels which contain high volatile ends.

Plaintiff introduced much evidence to show commercial success. This evidence did not show, however, that the commercial success enjoyed by the patented device was a matter of paying tribute to the genius of the patent involved. It established rather that plaintiff merely sold the patented construction to the same customers to whom it had previously sold flat plate pumps. Most of plaintiff's customers were the same customers (namely, large car manufacturers) they had before the advent of the patent in suit. Evidence showed that the Ford Motor Car Company had been

added as a customer, but this occurred some several years after the advent of the patented pump. The Court finds that the commercial success claimed for the patent in suit does not truly reflect patent genius but rather reflects sale practices and retention of previous customers.

For the reasons herein stated, the Court finds that United States Patent No. 2,480,003, issued to E. A. Johnson and Jack M. White, is invalid.

■ An invalid patent cannot be infringed. Hyster Company v. Hunt Foods, Inc., 7 Cir., 1959, 263 F.2d 130; New Products Corp. v. Outboard, Marine & Mfg. Co., 7 Cir., 1959, 263 F.2d 521. The patent is not infringed by the defendants.

■ The defendants also assert that the patent was procured through failure of the attorneys prosecuting the patent to make full disclosures to the Patent Office, which perpetrated a fraud on the Patent Examiner by the patentees. The Court has been unable to find any evidence to substantiate such a charge.

■ The defendants also charge that the patent was void for the reason that the specification fails to give adequate information. The evidence failed to substantiate such a charge.

■ It is further charged that the patent is void for the reason that the patentees are not the true inventors. No evidence was presented to substantiate this claim.

■ Defendants' claim that the structure of the patent was described for the first time more than one year after pumps having such structure were made and sold was not substantiated by the evidence.

The above together with the following shall be considered as findings of fact and conclusions of law.

### Additional Findings of Fact

1. This is an action for patent infringement arising under the patent laws of the United States. United States Patent 2,840,003, issued to Eldon A. Johnson and Jack M. White on June 24, 1958, pursuant to application filed September 16, 1954, is in issue.

2. The patent in issue relates to a fuel pump diaphragm assembly.

3. Plaintiff is assignee of the patent in suit.

4. Plaintiff ACF Industries is a New Jersey corporation which through its Carter Carburetor Division sells fuel pumps to the automotive industry, principally for original equipment.

5. Defendant Airtex is an Illinois corporation which manufactures and sells fuel pumps at its plant in Fairfield, Illinois, almost exclusively for replacement service.

6. Defendant United Industrial Syndicate, Incorporated, is a New York corporation licensed to do business in Illinois and has been in control of the operations of Airtex from a date prior to the commencement of this action.

7. The Court has jurisdiction of the parties and of the subject matter.

8. Defendant Airtex has counterclaimed for a declaratory judgment, declaring that the patent is invalid and not infringed.

9. Plaintiff relies only on claim 3 of the patent in suit.

10. The patented pump is alleged by plaintiff to be a considerable improvement by virtue of the curvature of the backing plates as compared with conventional flat plate pumps. The physical distinction resides in the peripheral portion of the outer backing plate of the patented pump in that it is designed to project into the bight, whereas in conventional flat plate pumps the outer plate does not have such peripheral formation. The inner plate is the same as in the Van Ranst Patents 2,464,196 and 2,576,894 and performs no function not performed in the Van Ranst construction.

11. Plaintiff's patent states certain advantages for its construction, an increase in volumetric efficiency and the overcoming of loop reversal which increases the life of the diaphragm by pre-

venting repetitive reversal of the diaphragm.

12. During the course of the prosecution of the patent application the Patent Office Examiner cited Van Ranst 2,464,-196 against claims 11 to 15 then in the application, rejecting all claims on Van Ranst, and found that claims 12 to 15 inclusive were not patentable over Van Ranst.

13. Plaintiff cancelled claims 11 to 15 inclusive and presented new claims which became the claims of the patent in suit. In the course of the proceedings before the Patent Office plaintiff argued that the patented construction differed from Van Ranst in that "the outer backing plate does not have a peripheral portion normally projecting into the concave portion of the bight and engaging the adjacent face of the diaphragm defining the bight for retaining the bight against substantial deflection regardless of pressure in the pumping chamber."

14. The sole feature of alleged novelty of plaintiff's claim as compared with Van Ranst consists of providing the outer backing plate with the peripheral portion which projects into the bight and engages the bight. Van Ranst does not show that specific feature but instead shows an enlarged outer plate which extends outwardly over the bight, the purpose for which is not specified in the Van Ranst specifications, however, the outer plate is substantially the equivalent of plaintiff's alleged invention.

15. To change the outer backing plate in Van Ranst to squarely meet the outer backing plate of the patent in suit is merely mechanical aptitude.

16. To persuade the Examiner to grant the patent plaintiff's assignors argued that without the projecting peripheral portion on the outer backing plate Van Ranst's diaphragm would be deflected and create an inoperative structure by virtue of the bight being forced into a reverse position. This argument was untrue.

17. The Examiner was misled by the argument that the Van Ranst construction would be inoperative.

18. Rockwell Patent 1,976,518 (Defendants' Exhibit 30) contains explanation and detailed drawings of the effect of a curved backing plate for preventing reversal of a diaphragm loop, which anticipates the construction of the patented structure except that in Rockwell the loop is directed away from rather than into the pump chamber.

19. Numerous prior art patents were introduced in evidence which disclosed diaphragm loops where the loops are formed by plates, directed loops having a rolling action, loops characterized as free arches, loops characterized as controlled arches being reinforced against reversal, loops characterized as rolling arches.

20. Pumps constructed with flexing directed loops where the loops meet the end walls or substantially meet the end walls of pumping chambers for the attainment of high volumetric efficiency have long been known in the art as disclosed by numerous prior art patents.

21. The defense of late claiming is not available to the defendants. The patent application as it was originally filed on September 16, 1954, both in its drawing and in its specifications disclosed the identical structure as the patent in suit. The drawing was not altered during the prosecution of the application. The changes made in the specifications were merely verbal and did not change the structure originally described. The structure described in claim 3 was disclosed in the application as it was originally filed.

*Additional Conclusions of Law*

1. The Court has jurisdiction of the parties and of the subject matter in this action.

2. Claim 3 of United States Letters Patent 2,840,003, issued to Eldon A. Johnson and Jack M. White on June 24, 1958, is invalid, being anticipated, disclosed and taught or suggested by the prior art.

3. Claim 3 of the patent in suit is invalid in that it did not contain the

exercise of inventive skill required for a patent grant.

4. United States Letters Patent 2,-840,003 is invalid and therefore not infringed by defendants.

5. Defendant Airtex is entitled to a judgment on its counterclaim for declaratory judgment of invalidity and noninfringement.

6. Defendants are entitled to their costs.

7. This is not an exceptional case which would permit the award of attorneys' fees and defendants are not entitled to attorneys' fees.

Parties to settle the order.